IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN M. CLINE, | ) | CASE NO. 5:15 CV 1569 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |

## Introduction

Before me[1] is an action by Benjamin M. Cline under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his application

for supplemental security income ("SSI").[2] The Commissioner has answered[3] and filed the

transcript of the administrative record.[4]

---

[1] ECF # 23. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ)

Cline, who was 23 years old at the time of the administrative hearing[11] graduated from high school (working with an IEP) and is enrolled at Stark State College.[12]   He was previously employed as an usher at Regal Cinemas.[13]

The Administrative Law Judge ("ALJ") found that Cline had the following severe impairments: Asperger's disorder and anxiety disorder (20 CFR 416.920(c)).[14] The ALJ

---

[5] ECF # 8.

[6] ECF # 12.

[7] ECF # 13 (Cline's brief), ECF # 20(Commissioner's brief).

[8] ECF # 13-2 (Cline's charts), ECF # 20-1 (Commissioner's charts).

[9] ECF # 13-1 (Cline's fact sheet).

[10] ECF # 25.

[11] ECF # 13-1 at 1.

[12] ECF # 11, Transcript of Proceedings ("Tr.") at 50)

[13] *Id.* at 35.

[14] *Id.* at 18.

decided that the relevant impairments did not meet or equal a listing.[15] The ALJ made the

following finding regarding Cline's residual functional capacity:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined by 20 CFR 416.967(b) except that he is further limited to unskilled, low stress work defined as follows:

-   Can understand, remember, and carry out simple, routine, and repetitive tasks involving no more than occasional and simple work-related decisions and only occasional use of judgment required on the job.

-   Must have routine and predictable work duties, activities, expectations, and requirements;

-   Can adapt to infrequent workplace changes that, when they do occur, should be anticipated, gradually introduced, and easily explained to him;

-   Cannot do any tasks with high pace, speed, and quota/production expectations/demands (*e.g.*, as found in assembly-line production work) but can perform goal oriented work (*e.g.*, as might be found in office cleaning);

-   Can engage in no interaction with the public but occasional, superficial interaction with co-workers that does not involve persuading others, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety or welfare of others; and

-   Should avoid as a precaution all exposures to hazards (hazardous machinery, unprotected heights, *etc.*) and cannot engage in any commercial driving.[16]

The claimant's only work activity prior to his application has been his work as an

usher at Regal Cinemas.[17]  His official earnings for 2009 and 2010 fall well short of the

[15] *Id.* at 19.

[16] *Id.* at 22-23.

[17] *Id*. at 35.

established regulatory thresholds of SGA.[18]  With that requirement not met, the claimant's

only job fails to qualify as "past relevant work" within the meaning of Social Security

regulations.[19]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing incorporating the RFC finding quoted above, the ALJ determined that a significant

number of jobs existed locally and nationally that Cline could perform.[20]    The ALJ,

therefore, found Cline not under a disability.[21]

**B.      Issues on judicial review**

Cline asks for reversal of the Commissioner's decision on the ground that it does not

have the support of substantial evidence in the administrative record. Specifically, Cline

presents the following issues for judicial review:

- Whether the ALJ erred in finding that the listing 12.10 was not met or equaled.[22]

- Whether the ALJ failed to give appropriate weight to treating sources.[23]

---

[18] *Id.* at 245.

[19] *Id* at 35.

[20] *Id.* at 36.

[21] *Id.* at 37.

[22] ECF # 13 at 13.

[23] *Id*. at 18.

- Whether the ALJ failed to meet her burden at Step 5 of the sequential evaluation.[24]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Analysis

**A.    Standards of review**

**1.    *Substantial evidence***

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

---

[24] *Id*. at 19.

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *The treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

---

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[28] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). [Plaintiff's last name only] filed only an application for supplemental security income benefits.

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

---

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37] The court noted that the regulation expressly contains a "good reasons" requirement.[38] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on

---

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

the party invoking it that cannot be set aside for harmless error.[42] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

to a treating physician's opinion created a substantial right exempt from the harmless error

rule.[43]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[44] recently

emphasized that the regulations require two distinct analyses, applying two separate

standards, in assessing the opinions of treating sources.[45] This does not represent a new

interpretation of the treating physician rule. Rather it reinforces and underscores what that

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[46]

*Blakley v. Commissioner of Social Security*,[47] and *Hensley v. Astrue*.[48]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion

should receive controlling weight.[49] The opinion must receive controlling weight if

(1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[42] *Id.*

[43] *Id.*

[44] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[45] *Id.* at 375-76.

[46] *Rogers*, 486 F.3d at 242.

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[49] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[50] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[51] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[52]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[53] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[54] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[55] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d at 242.

[53] *Gayheart*, 710 F.3d at 376.

[54] *Id.*

[55] *Id.*

and the treatment reports.[56] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[57]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[58]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[59] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[60] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[61] or that objective medical evidence does not support that opinion.[62]

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Rogers*, 486 F.3d 234 at 242.

[60] *Blakley*, 581 F.3d at 406-07.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[65]

- the rejection or discounting of the weight of a treating source without assigning weight,[66]

---

[63] *Blakley*, 581 F.3d at 407.

[64] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[65] *Blakley*, 581 F.3d at 407-08.

[66] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[67]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[68]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[69] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[70]

The Sixth Circuit in *Blakley*[71] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[72] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[73]

---

[67] *Id.*

[68] *Id.* at 409.

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend*, 375 F. App'x at 551-52.

[71] *Blakley*, 581 F.3d 399.

[72] *Id.* at 409-10.

[73] *Id.* at 410.

In *Cole v. Astrue*,[74] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[75]

**B.     Application of standards**

This case fundamentally presents a challenge to the Step Three finding that Cline did not meet or equal Listings 12.06 and 12.10.  This challenge rests heavily on the argument that the ALJ improperly weighed the opinion of the Cline's treating physician and erroneously assigned greater weight to the opinions of two state reviewing physicians.  Secondarily, Cline asserts that at Step Five the ALJ erred by relying on the VE's answer to an inaccurate hypothetical.

Initially, the ALJ produced an unusually thorough and comprehensive opinion.[76] Indeed, Cline himself observes that the ALJ "carefully detailed" her reasons for not giving controlling weight to the opinion of Dr. Paulo Borges, M.D., the family practice physician who treated Cline.[77]

---

[74] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[75] *Id.* at 940.

[76] Tr. 15-37.

[77] ECF # 13 at 18.

The ALJ specifically found that Dr. Borges's "very few" treatment notes from January 2012 through November 2013 essentially reflected just adult "well visit" examinations, which document only an upper respiratory infection in the winter of 2013, and show that Cline's hyperlipidemia was treatable with diet changes.[78]  The ALJ further found that although the Asperger's diagnosis is contained in Dr. Borges's notes, Dr. Borges "noted no clinical observations, symptoms or anything else" about this condition.[79]

That said, Cline argues that although the ALJ "detailed [Cline's] infrequent visits [with Dr. Borges] and the fact that there are no clinical notes about any Asperger's Syndrome symptoms contained in [Dr. Borges's] few well-patient visits with Cline," Dr. Borges nevertheless had "a continued opportunity to interact with Cline and to observe Cline."[80] Cline maintains, therefore, that despite the absence of clinical notes about Asperger's, and no medical treatment prescribed for this condition, the ALJ should have sought additional input from Dr. Borges to more fully understand how Cline's Asperger's would effect his ability to "attempt work and to be employed for an extended period...."[81]

In addition to discussing Dr. Borges's treatment notes on the subject of Cline's Asperger's disorder, the ALJ also provided a lengthy analysis of Dr. Borges's opinion in light of the remand mandate from the Appeals Council. As part of that analysis, the ALJ first

---

[78] Tr. at 27.

[79] *Id.*

[80] *Id.*

[81] ECF # 13 at 18.

noted that Dr. Borges's opinion is entitled to "little weight," and not controlling weight, because Dr. Borges, as a family physician, never treated the mental impairments underlying his opinion and is himself not a mental health expert.[82] Further, and as discussed above, the ALJ observed that Dr. Borges's opinion was "conclusory," and offered no "explanation whatsoever of the evidence relied upon in forming [the functional opinion]."[83]

Finally, the ALJ noted that Dr. Borges's opinion was inconsistent with, and not supported by, the records of Dr. John Druby, M.D., Cline's treating pediatrician through 2010, and the consultative psychological examiner, Dr. Joshua Magelby, Ph.D.[84] But, the ALJ gave only "some weight" to Dr. Magleby's functional opinion due to its "rather vague" use of terminology, and because some portions of that opinion underestimate the degree to which Cline is impaired by Asperger's.[85]

---

[82] Tr. at 34.

[83] *Id*. at 35.

[84] *Id.* A separate discussion of Dr. Magleby's evaluation is at Tr. 27-28. The ALJ pointedly observed in that discussion that "[b]eyond Dr. Magleby's evaluation, there is no other medical evidence of record" specifically addressing Cline's mental function, although the ALJ was also careful to note that educational records from Cline's transcript at Stark State College were a part of the record, and were considered in this context. *Id*. at 28-29. Moreover, the ALJ noted and considered the non-medical records from Cline's employer. *Id*. at 29-30.

[85] *Id*. at 33.

Taken together, the ALJ concluded that neither Dr. Druby's treatment notes nor the opinion of Dr. Magleby support Dr. Borges's functional opinion, particularly as to the severity of limitations, such as the length of time Cline would be absent from work.[86]

Furthermore, the ALJ specifically addressed the question of whether Cline met or equaled the listings at 12.06 or 12.10.  First, the ALJ relied on the conclusions of the state agency reviewers, Robelyn Marlow, Ph.D., and Deryck Richardson, Ph.D.  Although the ALJ observed that in particular Dr. Richardson's report was somewhat dated,[87] the ALJ carefully examined the conclusions of those reports in terms of new evidence from Cline's own report, the consultative psychological evaluation, and documents from the employer and the claimant's school.[88]  In addition, the ALJ observed that Cline's former treating pediatrition, Dr. Duby, upgraded Cline's mental functioning level after seeing a low average full IQ score and "squarely average" performance IQ score.[89]

Taken together, the ALJ determined that none of the listings were met or equaled, and that the new evidence would not establish a greater level of restriction or difficulty.[90] As the Commissioner points out, it was not error to for the ALJ to fail to obtain an updated medical opinion in this situation, especially because the ALJ thoroughly addressed the new evidence

---

[86] *Id*. at 35.

[87] *Id*. at 20.

[88] *Id*. at 20-22.

[89] *Id*. at 21.

[90] *Id.* at 19.

and explained why that evidence would not change the conclusion of the state agency reviewers.

Thus, inasmuch as there is substantial evidence in support of both the Step Three finding and the decision to not give controlling weight to the opinion of Dr. Borges, there is no basis to disturb the Step Five finding grounded in the RFC finding at Step 4.

## Conclusion

For the reasons stated, I find that substantial evidence supports the finding of the Commissioner that Benjamin Cline is not disabled, and that decision is hereby affirmed.

IT IS SO ORDERED.

Dated: September 26, 2016                        s/ William H. Baughman, Jr.
                                                United States Magistrate Judge